**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| TOMATO PIE, INC. D/B/A MATTHEW'S PIZZA, 606 Greenville Avenue Staunton, Virginia 24401, Plaintiff, v. MATTHEWS L3 PIZZERIA, LLC 8007 Woodhaven Road Baltimore, MD 21237, and CHRISTOPHER MALER 8007 Woodhaven Road Baltimore, MD 21237, Defendants. | Civil Action No.: |

**TABLE OF AUTHORITIES**

**CASES**

AFT v. Bessent,
    765 F. Supp. 3d 482, 498 (D. Md. 2025) ...................................................................... 9

AMP Inc., v. Foy,

1

540 F.2d 1181 (4th Cir. 1976) ................................................................................ 18

Anheuser-Busch, Inc. v. L & L Wings, Inc.,
    962 F.2d 316 (4th Cir. 1992) .............................................................................. 11

Augusta Nat'l, Inc. v. Exec. Golf Mgmt., Inc.,
    996 F. Supp. 492 (D.S.C. 1998) ........................................................................ 16

ClearOne Advantage, LLC v. Kersen,
    710 F. Supp. 3d 425, 431 (D. Md. 2024) ............................................................ 9

Combe Inc. v. Dr. August Wolff GmbH & Co. KG Arzneimittel,
    309 F. Supp. 3d 414 (E.D. Va. 2018), *aff'd* 851 F. App'x 357 (4th Cir. 2021) ........................ 10

El Pollo Rico, LLC v. Wings & Pollo, LLC,
    No. 21-CV-2346, 2002 WL 2916168 (D. Md. July 25, 2022) ........................................... 17, 18

Fairbanks Cap. Corp. v. Kenney,
    303 F. Supp. 2d 583 (D. Md. 2003) .................................................................... 17

FleetPride, Inc. v. Fleet Care Tire and Truck Service, LLC,
    2011 WL 442051 (D.S.C., 2011) ........................................................................ 18

Helene Curtis Indus., Inc. v. Church & Dwight Co.,
    560 F.2d 1325, 1333 (7th Cir. 1977) .................................................................. 18

Iceny USA, LLC v. M & M's, LLC,
    421 F. Supp. 3d 204 (D. Md. 2019) .................................................................... 18

Innovative Value Corp. v. Bluestone Fin., LLC,
    No. CIVA DKC 2009-0111, 2009 WL 3348231 (D. Md. Oct. 15, 2009). ................................... 17

JFJ Toys, Inc. v. Sears Holdings Corp.,
    237 F. Supp. 3d 311 (D. Md. 2017) .................................................................... 10

Lone Star Steakhouse & Saloon v. Alpha of Va.,
    43 F.3d 922 (4th Cir. 1995) ........................................................................... 13

Mayson-Dixon Strategic Consulting, LLC v. Mason-Dixon Polling & Strategic Consulting, Inc.,
    324 F. Supp. 3d 569 (D. Md. 2018) .................................................................... 10

My-T Fine Corp. v. Samuels,
    69 F.2d 76, 78 (2nd Cir. 1934) ....................................................................... 18

NaturaLawn of Am., Inc. v. W. Grp., LLC,
    484 F. Supp. 2d 392 (D. Md. 2007) .................................................................... 16

Pizzeria Uno Corp. v. Temple,
    747 F.2d 1522 (4th Cir. 1984) ............................................................................. 12, 13

Rosetta Stone, Ltd. v. Google, Inc.,
    676 F.3d 144 (4th Cir. 2012) ............................................................................. 10

Scotts Co. v. United Industries Corp.,
    315 F. 3d 264 (4th Cir. 2002) ............................................................................. 16, 17

Toolchex, Inc. v. Trainor,
    634 F. Supp. 2d 586, 593 (E.D. Va. 2008) ....................................................... 18

U.S. Dept. of Labor v. Wolf Runing Mining Co., Inc.,
    452 F.3d 275 (4th Cir. 2006) ............................................................................. 9

Variety Stores, Inc. v. Walmart Inc.,
    852 Fed. Appx. 711, 718–19 (4th Cir. 2021) ................................................... 12

Winter v. Nat. Res. Def. Council, Inc.,
    555 U.S. 7 (2008) .............................................................................................. 9

## **FEDERAL STATUTES**

Lanham Act .............................................................................................................. 9, 10, 18

Lanham Act 15 U.S.C. § 1114(1)(a) ....................................................................... 9

Lanham Act § 32(a), 15 U.S.C. § 1115(a) .............................................................. 11

Lanham Act § 43(a), 15 U.S.C. § 1127 ................................................................... 10

## **RULES**

Federal Rule of Civil Procedure 65 ........................................................................ 7, 9

<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR</u>
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Tomato Pie, Inc., doing business as Matthew's Pizza (hereinafter "Matthew's Pizza I"),

pursuant to Federal Rule of Civil Procedure 65, hereby seeks a temporary restraining order and

preliminary injunction to restrain the Defendants, Matthew's L3 Pizzeria, LLC (hereinafter

"Matthew's Pizza II") and Christopher Maler, the owner and operator of Matthew's Pizza II

("Maler") (Matthew's Pizza II and Maler collectively referred to herein as "Defendants"), from

infringing upon Plaintiff's federally registered trademark, MATTHEW'S PIZZA® ("Plaintiff's

Registered Mark") and engaging in unfair competition intended to deceive consumers and the

general public at large.

## I.    FACTUAL BACKGROUND

Plaintiff Tomato Pie, Inc. d/b/a Matthew's Pizza owns the federally registered trademark

"MATTHEW'S PIZZA®" (Registration No. 7,613,183) and operates Baltimore's oldest pizzeria,

which has been serving the community since 1943, first as a small bakery in Highlandtown and

since 1947 at its current location on Eastern Avenue. (Compl. ¶¶ 9–10). The restaurant gained

recent national attention when featured on Barstool Sports' "One Bite Pizza Reviews" hosted by

Dave Portnoy in February 2025, garnering over 272,000 views and further cementing Matthew's I

as a must-visit destination. (Compl. ¶ 9).

Defendant Christopher Maler was a co-owner of the prior company that owned Matthew's

Pizza for approximately 25 years. (Compl. ¶ 11). However, Maler sold his interest in Matthew's

Pizza in 2020 and retains no right to use Plaintiff's MATTHEW'S PIZZA® Mark. (Compl. ¶ 11).

Despite this, in or about May 2024, Plaintiff became aware that Maler was contemplating opening

a pizza restaurant using the mark MATTHEWS L3 PIZZERIA that would infringe Plaintiff's

Registered Mark. (Compl. ¶ 12). Plaintiff sent two cease and desist letters to Maler; the first on

4

May 16, 2024 and September 24, 2024 in an effort to stop Defendants from opening a pizza restaurant using a trademark that would infringe Plaintiff's Registered Mark. (Compl. ¶ 12). Matthews II and Maler ignored both cease and desist letters. (Compl. ¶ 12).

On August 7, 2025, prior to Matthew's II's soft opening on August 12, 2025, undersigned counsel sent a cease and desist letter to Defendants which demanded that Maler and Matthew's II cease and permanently refrain from using any mark that would infringe upon Plaintiff's Registered Mark. (Compl. ¶ 13).

The Defendants ignored Plaintiff's counsel's August 7, 2025 cease and desist letter and Defendants opened a competing pizza restaurant using the infringing mark MATTHEW'S L3 PIZZERIA in mid-August 2025. (Compl. ¶ 14). Since Matthew's Pizza II opened its doors, there are numerous instances of customers, vendors and the general public who are actually confused about Matthew's Pizza II's affiliation with Matthew's Pizza I – many customers believing that Matthew's Pizza II is the second location of Matthew's Pizza I. (Compl. ¶ 15). Even vendors, including Matthew's Pizza I and Matthew's Pizza II's payroll point of service company, Toast, is under the impression that all of Matthew's Pizza II's employees are employed by Matthew's Pizza I. (Compl. ¶¶ 16–17).

Defendants' willful infringement is particularly egregious given Maler's intimate knowledge of Plaintiff's Registered Mark and business. (Compl. ¶ 31). Maler was fully aware of Plaintiff's Registered Mark's commercial value, consumer recognition, and legal protection. (Compl. ¶ 31). Maler deliberately chose to adopt a confusingly similar mark for his competing pizza restaurant. (Compl. ¶ 31). Defendants' willful infringement is further evidenced by their complete disregard for Plaintiff's legal rights after receiving three separate cease and desist letters dated May 16, 2024, September 24, 2024, and August 7, 2025. (Compl. ¶ 31).

# I.    <u>LEGAL ARGUMENT</u>

Plaintiff respectfully submits this Motion for Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65. Pursuant to Rule 65, a court may issue a temporary restraining order without notice to the adverse party where the plaintiff demonstrates that immediate and irreparable injury will result before the opposing party can be heard. *See ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 431 (D. Md. 2024). Plaintiffs seeking such relief are held to the same standard of proof for issuance of a temporary restraining order, regardless of whether notice is provided. *AFT v. Bessent*, 765 F. Supp. 3d 482, 498 (D. Md. 2025) (quoting *Maages Auditorium v. Prince George's County*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017)).

To obtain a preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical. *See U.S. Dep't of Labor v. Wolf Run Mining Co., Inc.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006). In this case, all four elements are satisfied, justifying the issuance of both a temporary restraining order and a preliminary injunction in Plaintiff's favor.

## I.    Plaintiff is Likely to Prevail on the Merits of Its Claims for Trademark Infringement and Unfair Competition Arising Out of Defendants' Unauthorized Use of the MATTHEW'S PIZZA® Mark.

Plaintiff is likely to succeed on the merits of its claims for trademark infringement, vicarious trademark infringement, and unfair competition. Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a) prohibits unfair competition through the use of false or misleading designations of origin. Given the standard for unfair competition is essentially the same standard

used to evaluate trademark infringement per *JFJ Toys, Inc. v. Sears Holdings Corp.,* 237 F. Supp. 3d 311, 327 (D. Md. 2017), to prevail on its claims of trademark infringement and unfair competition under the Lanham Act, Plaintiff must demonstrate that "(1) it owns a valid mark; (2) the defendant used the mark 'in commerce' and without the plaintiff's authorization; (3) the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) the defendant's use of the mark is likely to confuse consumers." *Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012); *Mayson-Dixon Strategic Consulting, LLC v. Mason-Dixon Polling & Strategic Consulting, Inc.,* 324 F. Supp. 3d 569, 575 (D. Md. 2018).

      A. <u>Matthew's Pizza I Owns Plaintiff's Registered Mark and Plaintiff's Registered Mark is a Valid Mark.</u>

Matthew's Pizza I has continuously used the Plaintiff's Registered Mark in commerce to identify its pizza restaurant since 1943. (Compl. ¶¶ 9, 10, 22, and 26). Matthew's Pizza I owns the valid federal registration for MATTHEW's PIZZA on the Principal Register of the United States Patent and Trademark Office. (Compl. ¶ Exhibit A).

      B. <u>Defendants Used the Mark in Commerce Without Plaintiff's Authorization</u>

Defendants are using the infringing mark MATTHEWS L3 PIZZERIA to identify a pizza restaurant located in Fallston, Maryland.

To be considered "use in commerce," the Fourth Circuit has held that 15 U.S.C. § 1127 requires that the infringing mark be placed on goods "sold or transported in commerce." *See Combe Inc. v. Dr. August Wolff GmbH & Co. KG Arzneimittel*, 309 F. Supp. 3d 414, 420 (E.D. Va. 2018), *aff'd* 851 F. App'x 357 (4th Cir. 2021).

Defendants are operating a competing pizza restaurant using the mark MATTHEWS L3 PIZZERIA, which infringes upon Plaintiff's Registered Mark, MATTHEW'S PIZZA. In addition to using the infringing mark as the business name, Defendants have used the infringing mark in its advertising and on social media, as well as in the restaurant, through signage, and menus (Compl. ¶ 32) Plaintiff never authorized Defendants' use of the mark and to the contrary sent several cease and desist letters to Defendants to demand that they stop using the infringing mark. (Compl. ¶¶ 12–14).

    C.   <u>Matthew's Pizza II's Use of the Infringing Mark, MATTHEWS L3 PIZZERIA is Likely to Confuse Consumers.</u>

The unauthorized use of a trademark infringes the rights of the trademark holder if the use is likely to confuse an ordinary consumer as to the source or sponsorship of the goods. *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992). In assessing whether a likelihood of confusion exists, the Fourth Circuit considers nine factors: "(1) the strength or distinctiveness of the plaintiff's mark; (2) the similarity of the two marks; (3) the similarity of the goods or services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of advertising used by the parties; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public." *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). "Not all of these factors are of equal relevance in every case, and no single factor is dispositive. Rather, the court must consider the evidence as it bears on the totality of the circumstances in determining whether a likelihood of confusion exists." *Id.*

    i.   *Plaintiff's Registered Mark is Strong.*

Plaintiff's Registered Mark, MATTHEW'S PIZZA®, is a strong, distinctive mark entitled to broad protection. The mark has been in continuous use since 1943, establishing over 80 years

of consumer recognition and goodwill in the Baltimore market. (Compl. ¶¶ 9, 10, 22, and 26). The strength of Plaintiff's mark is evidenced by its federal registration on the Principal Register, which provides prima facie evidence of the mark's validity and distinctiveness. *See* 15 U.S.C. § 1115(a).

The mark's strength is further demonstrated by its recent national exposure through Barstool Sports' "One Bite Pizza Reviews," which garnered over 272,000 views and reinforced MATTHEW'S PIZZA as a distinctive identifier of Plaintiff's restaurant services. (Compl. ¶ 9). The longevity of use, federal registration, and widespread consumer recognition establish that Plaintiff's mark is entitled to strong protection against confusingly similar marks.

Courts have consistently held that strong marks receive broader protection and create a greater likelihood of confusion when similar marks are used by competitors. *See Variety Stores, Inc. v. Walmart Inc.*, 852 Fed. Appx. 711, 718–19 (4th Cir. 2021); *see also Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). The strength of Plaintiff's MATTHEW'S PIZZA® mark weighs heavily in favor of finding a likelihood of confusion with Defendants' confusingly similar MATTHEWS L3 PIZZERIA mark.

        ii.      *The Two Marks MATTHEW'S PIZZA and MATTHEWS L3 PIZZERIA are Nearly Identical.*

The infringing mark MATTHEWS L3 PIZZERIA is confusingly similar to Plaintiff's Registered Mark, MATTHEW'S PIZZA®. The marks are substantially similar in sound, appearance, and commercial impression. Both marks prominently feature the distinctive name "MATTHEWS" followed by a clear reference to pizza. The differences between the marks—the addition of "S," "L3," and "ERIA" to Defendant's mark—are insufficient to distinguish the marks or eliminate the likelihood of confusion. The core identifying element "MATTHEWS" remains identical in pronunciation and nearly identical in appearance, while both marks clearly identify a pizza restaurant.

iii.  *The Complete Overlap of Services, Geographic Markets, and Advertising Methods Between the Parties.*

The Defendants use the infringing mark MATTHEWS L3 PIZZERIA in connection with identical goods and services offered by Plaintiff under its registered mark MATTHEW'S PIZZA®. Both establishments provide dine-in, takeout, and delivery pizza services, offering similar menu items including pizza, appetizers, and beverages, targeting the same demographic of pizza consumers in Maryland. Both establishments operate within Maryland, creating direct geographic competition with overlapping customer bases and delivery zones that place both restaurants in competition for the same customers. Defendants utilize virtually identical marketing channels to Plaintiff, including social media platforms (Facebook, Instagram, TikTok), online review sites (Google, Yelp, TripAdvisor), and food delivery applications (DoorDash, Uber Eats, Grubhub). This parallel marketing approach amplifies consumer confusion by presenting both establishments in the same digital spaces where customers research and select dining options. As the Fourth Circuit held in *Lone Star Steakhouse*, where parties operated "identical sit-down restaurants with full bar service" and "overlapping menus," the similarity of services creates a strong likelihood of confusion. 43 F.3d at 937. Here, the identity of services is even more pronounced, as both establishments operate pizza restaurants with substantially identical offerings in the same market, with the same name—MATTHEWS.

iv.  *Defendants' Intended to Infringe Plaintiff's Registered Mark*

Defendants' willfully intended to infringe Plaintiff's Registered Mark and trade on Plaintiff's established goodwill and reputation. While intent is not required to establish likelihood of confusion, evidence of intentional copying "is strong evidence of a likelihood of confusion since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as deliberately to induce confusion." *Pizzeria Uno*

10

*Corp. v. Temple*, 747 F.2d at 1535. The timeline demonstrates escalating bad faith: the first cease and desist letter was sent and ignored on May 16, 2024, the second was sent and ignored on September 24, 2024, the third cease and desist letter from legal counsel was sent and ignored on August 7, 2025, and Defendants proceeded with opening on August 12, 2025, despite multiple warnings. Defendants' persistence in using the confusingly similar mark after receiving three separate cease and desist letters, demonstrates a willful disregard for Plaintiff's legal rights and confirming Defendants' intent to continue trading on Plaintiff's reputation and goodwill.

v.    *There are Numerous Instances of Actual Confusion Among Plaintiff's Consumers and the General Public.*

There is ample evidence of actual consumer confusion seen in numerous customer reviews and social media posts across platforms such as Google, Facebook, Instagram, TripAdvisor, Reddit, and TikTok. (Compl. ¶ 15). Many customers have demonstrated that they believe Matthew's Pizza II is the second location of Matthew's Pizza I or at least affiliated with, endorsed by, or otherwise approved of by Matthew's Pizza I. *Id.*

The confusion spans ordinary consumers to sophisticated business vendors, such as Toast, the payroll point-of-service company serving both establishments. Recently, Toast mistakenly believed all Matthew's Pizza II employees were employed by Matthew's Pizza I and uploaded all of Matthew's Pizza II's employees into the payroll system for Matthew's Pizza I. (Compl. ¶¶ 16–17). This vendor confusion demonstrates that even businesses with professional relationships cannot distinguish between the establishments, indicating ordinary consumers face even greater likelihood of confusion. This confusion emerged immediately upon Defendants' opening in August 2025 and has persisted across multiple platforms and contexts. Particularly damaging is evidence that customers disappointed with Matthew's Pizza II attribute their negative experiences to the Matthew's Pizza brand generally, harming Plaintiff's goodwill and reputation.

vi.    *Defendants' Substandard Quality Creates Additional Reputational Harm to Plaintiff*

The quality of Defendants' pizza and restaurant services is inferior to that of Plaintiff's established restaurant, creating additional irreparable harm to Plaintiff's reputation that it has built over eight decades. Consumer reviews and social media posts demonstrate that customers who believe they are patronizing a second location of Matthew's Pizza I are disappointed with the food quality, service, and overall experience at Matthew's Pizza II.

This disparity in quality creates a particularly damaging form of consumer confusion, as disappointed customers attribute their negative experiences to Plaintiff's brand rather than recognizing Defendants as a separate, unaffiliated business. The inferior quality of Defendants' products and services directly harms Plaintiff's carefully cultivated reputation for quality and consistency built over more than eight decades of operation.

Under Fourth Circuit precedent, "If a defendant markets a product under a mark similar to that affixed by a competitor to a commodity of like nature but superior manufacture, that the defendant's product is markedly inferior is likely to be highly probative of its reliance on the similarity of the two marks to generate undeserved sales." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 467 (4th Cir. 1996).

Accordingly, this factor weighs in favor of Plaintiff.

vii.    *The Unsophisticated Nature of the Consuming Public Increases Likelihood of Confusion*

The consuming public for pizza restaurant services consists primarily of ordinary consumers who make quick dining decisions. Pizza customers typically rely on name recognition, location, and reputation when selecting restaurants, particularly for casual dining experiences.

The average consumer is not sophisticated and does not conduct detailed investigations to determine restaurant ownership or affiliation before making purchasing decisions. When encountering similar restaurant names like MATTHEW'S PIZZA and MATTHEWS L3 PIZZERIA in the same geographic market, ordinary consumers are likely to assume a connection, affiliation, or common ownership between the establishments.

This factor is particularly relevant given that many consumers have already demonstrated actual confusion by posting reviews and social media content indicating they believe Matthew's Pizza II is a second location of Matthew's Pizza I. The unsophisticated nature of the consuming public in this market increases the likelihood that Defendants' use of a confusingly similar mark will continue to mislead consumers about the source and affiliation of restaurant services.

The lack of consumer sophistication in this market weighs strongly in favor of finding a likelihood of confusion, as ordinary consumers cannot be expected to discern the subtle differences between MATTHEW'S PIZZA and MATTHEWS L3 PIZZERIA when making quick dining decisions.

## II.     Plaintiff Has and Will Continue to Suffer Irreparable Harm From Defendants' Unauthorized Use of the MATTHEW'S PIZZA® Mark.

Irreparable harm is presumed in trademark infringement cases once the plaintiff demonstrates a likelihood of confusion, given the inherent injury to the reputation and goodwill of the trademark owner. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002); see also *Augusta Nat'l, Inc. v. Exec. Golf Mgmt., Inc.*, 996 F. Supp. 492, 496 (D.S.C. 1998) ("The irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is enormous, immediate, and presumed in law."); *NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484 F. Supp. 2d 392, 401 (D. Md. 2007) ("Violation of a trademark is a claim especially suited to

injunctive relief because it can result in irreparable harm where there is an inherent injury to the goodwill and reputation of the plaintiff.").

Despite Plaintiff's issuance of three separate cease and desist letters, Defendants continue to infringe upon the registered MATTHEW'S PIZZA® Mark. Courts have recognized that where "further infringement is a continuing threat, making remedies at law insufficient to compensate for Plaintiff['s] injuries," injunctive relief is warranted. *Innovative Value Corp. v. Bluestone Fin., LLC*, 2009 WL 3348231, at *3 (D. Md. Oct. 15, 2009).

Although Plaintiff is not required to prove irreparable harm, it is clearly established in this case. Defendants' unauthorized use of a mark that infringes Plaintiff's Registered Mark has caused, and continues to cause, consumer confusion, mistake, and deception as to the affiliation, connection, or association between Matthew's Pizza II and Matthew's Pizza I. This confusion has already led to reputational harm through negative reviews aimed at Defendants' food, service, and operations, which are mistakenly attributed to Plaintiff. If Defendants' conduct is not enjoined, the confusion will persist, further eroding Plaintiff's goodwill, impairing its ability to retain customers, and enabling Defendants to unjustly benefit from the reputation Plaintiff has built over time.

### III.    The Balance of Equities Tips in Favor of Granting Plaintiff's Motions.

In weighing the harms to the parties, any potential injury to Defendants from the issuance of an injunction is far outweighed by the significant and ongoing harm to Plaintiff if relief is not granted. *See Fairbanks Cap. Corp. v. Kenney*, 303 F. Supp. 2d 583, 591 (D. Md. 2003) (citing *Scotts Co.*, 315 F.3d at 271). As courts have recognized, the "balance of hardships clearly tips in favor of Plaintiff" where Defendants "have no right to operate such a similarly-named business and to hold [themselves] out, through name, signage, or otherwise, as affiliated with Plaintiff," and where the "unauthorized use poses a threat to [Plaintiff's] efforts and expenditures in developing

14

goodwill in [its] name and brand." *El Pollo Rico, LLC v. Wings & Pollo, LLC*, No. 21-CV-2346, 2022 WL 2916168, at *3 (D. Md. July 25, 2022) (citing *FleetPride, Inc. v. Fleet Care Tire and Truck Service, LLC*, 2011 WL 442051, at *4 (D.S.C. 2011)).

Here, it would be fundamentally inequitable to allow Defendants to continue infringing on Plaintiff's Registered Mark. Any harm Defendants may suffer from injunctive relief is minimal and, importantly, self-inflicted. Defendants' losses, if any, stem directly from their own willful and knowing violations of the Lanham Act. Indeed, where infringing conduct is intentional, a defendant's claimed hardship "carries 'little' weight in evaluating the balance of hardships." *See Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008) (referencing *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977)); *see also My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2nd Cir. 1934).

Moreover, the harm to Plaintiff cannot be adequately remedied by monetary damages. Accordingly, the balance of equities strongly supports the issuance of a temporary restraining order and preliminary injunction. Without such relief, Plaintiff will continue to suffer irreparable harm, while Defendants will continue to unjustly benefit from Plaintiff's established brand reputation and goodwill.

### IV.    The Public Interest Lies in Favor of Granting Plaintiff's Motion.

In trademark infringement and unfair competition cases, the public interest overwhelmingly supports the issuance of injunctive relief, as it is the public who is misled and confused by the infringing conduct. A core purpose of trademark law is "to protect purchasers from being misled as to the identity of the enterprise from which goods and services are obtained." *Iceny*

*USA, LLC v. M & M's, LLC*, 421 F. Supp. 3d 204, 223 (D. Md. 2019) (citing *AMP Inc. v. Foy*, 540 F.2d 1181, 1185 (4th Cir. 1976)).

Here, there is ample evidence that consumers are already confused—and will continue to be deceived—regarding the affiliation between Plaintiff's well-established pizza restaurant and Defendants' competing business, both of which are using the name MATTHEW'S. Defendants' continued and intentional use of Plaintiff's Registered Mark, despite having no authorization to do so, exemplifies the type of infringement the Lanham Act is intended to prevent.

Granting Plaintiff's motion for a temporary restraining order and preliminary injunction is necessary not only to protect Plaintiff's rights, but also to prevent further consumer deception and uphold the public interest in fair commercial practices.

## V.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

September 26, 2025                        Respectfully submitted,


                                        */s/ Kaitlin D. Corey*_____
                                        James B. Astrachan (Fed. Bar No. 03566)
                                        Kaitlin D. Corey (Fed. Bar No. 19907)
                                        Corey Tepe, LLC
                                        6325 Woodside Court, Suite 130
                                        Columbia, MD 21046
                                        Telephone: (443) 452-5280
                                        Facsimile: (443) 452-5262
                                        jim@coreytepe.com
                                        kaitlin@coreytepe.com
                                        **Attorneys for Plaintiff, Tomato Pie, Inc. d/b/a Matthew's Pizza**

16