IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TOMATO PIE, INC, D/B/A MATTHEW'S PIZZA, | * | |
| | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. 1:25-cv-03214-MJM |
| MATTHEWS L3 PIZZERIA, LLC, *et al.* | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendants Matthews L3 Pizzeria, LLC ("L3 Pizzeria") and Christopher Maler [1] respectfully submit this Memorandum in Support of Opposition to Plaintiff Tomato Pie, Inc, d/b/a Matthew's Pizza's ("Matthew's Pizza") Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (the "Motion"), and state:

### I.   INTRODUCTION

<u>As a preliminary matter</u>, to avoid any chance of confusion, L3 Pizzeria is agreeable to changing its name. It anticipates doing so could take up to 90 days and cost approximately $15,000.[2] L3 Pizzeria will stipulate to an order that provides allowances for these constraints.

<u>As to the merits</u>, Plaintiff rests its Motion on the claim that L3 Pizzeria is infringing on its federally registered trademark "MATTHEW'S PIZZA®" (Registration No. 7,613183), by using the name "Matthews" in its trade name. There are several problems with this position, including, but not limited to the following:

---

[1] An Affidavit of Christopher Maler in Support of this Opposition is attached as <u>Ex. A</u>.

[2] Defendants are still working on confirming the exact cost of the name change.

First, there is a substantial dispute as to the validity of Plaintiff's mark. The dominant portion of the mark, "Matthew," is a common first name, and Plaintiff has not demonstrated that it has acquired secondary meaning. The names "Matthew" and "Matthews" are among the most common first and last names in the United States, particularly in Maryland, and are widely used by numerous other businesses, including other restaurants, in Maryland and neighboring states. While Plaintiff's mark uses "Matthew," L3 Pizzeria uses the surname "Matthews" and further differentiates itself with the addition of "L3" and "Pizzeria." Thus, L3 Pizzeria is distinguishable from Plaintiff, which is in a different county and does not have a second location.

Second, neither Mr. Maler nor L3 Pizzeria have ever claimed to be affiliated with Plaintiff beyond accurately stating that Mr. Maler is a former owner, and they have clearly communicated with customers that they are not affiliated with Plaintiff. For example, on October 13, 2025, L3 Pizzeria released an official statement on its Facebook page clarifying that it is in no way affiliated with Plaintiff. Given their confidence in their product, Defendants do not wish for L3 Pizzeria to be confused with Plaintiff. For the benefit of both businesses and to avoid further litigation, L3 Pizzeria is willing to change its name, provided any order by this Court afford at least 90 days to do so to minimize business disruption, financial loss, and undue hardship for its employees. L3 Pizzeria respectfully requests that Plaintiff share the $15,000 cost, as the name "Matthew," which is the subject of the dispute, is a common first name and not distinctive to Plaintiff.

In sum, L3 Pizzeria's trade name is entirely distinguishable from Plaintiff's. Plaintiff's mark is weak and non-distinctive, as it relies on an extremely common first name widely used by numerous businesses across the state, and Plaintiff has failed to show that it is uniquely associated with its establishment. A serious question exists as to whether Plaintiff's mark is valid and protectable. Moreover, Defendants do not wish to be associated with Plaintiff and are willing, for

the benefit of both businesses, to split the cost with Plaintiff to change the name within 90 days. For these reasons, Plaintiff's requested relief is unnecessary, and the Motion should be denied.

## II.     BACKGROUND

On August 12, 2025, L3 Pizzeria opened at 1517 Rock Spring Road, Forest Hill, MD, 21050, located in Harford County. L3 Pizzeria is owned and operated by Mr. Maler, a former owner of Plaintiff. Plaintiff is a pizza parlor located at 3131 Eastern Avenue, Baltimore, MD 21224, approximately 26.8 miles and a 40-minute drive from L3 Pizzeria. Plaintiff owns the federally registered trademark "MATTHEW'S PIZZA®" (Registration No. 7,613,183), registered in 2024. Plaintiff advertises itself as the "oldest pizzeria in Baltimore" and was established in 1943.

Plaintiff accuses Mr. Maler and L3 Pizzeria of trademark infringement. No part of L3 Pizzeria's trade name is identical to Plaintiff's mark. L3 Pizzeria's trade name includes the word "Matthews," which neither Mr. Maler nor L3 Pizzeria believe infringes Plaintiff's mark. Both "Matthew" and "Matthews" are common first and last names widely used in Maryland and neighboring states, including by other Italian restaurants and pizzerias. "Matthew" and "Matthews" are among the most common first and last names in the United States. L3 Pizzeria further differentiates itself by using "L3," representing the first letter in the names of Mr. Maler's children, and the word "Pizzeria."

At no time have Mr. Maler or L3 Pizzeria claimed to be affiliated with Matthew's Pizza beyond accurately stating that Mr. Maler is a former owner of Plaintiff. L3 Pizzeria likewise does not advertise itself in a manner similar to that of Plaintiff's use. Plaintiff's branding emphasizes its status as Baltimore's oldest pizzeria, and it has never opened a second location in over eighty years of operation. Plaintiff is not a chain or multi-location restaurant, and L3 Pizzeria has never claimed to be a new location of Plaintiff. For instance, on October 13, 2025, L3 Pizzeria released

an official statement on its Facebook page clarifying that it is in no way affiliated with Matthew's Pizza. Again, for the benefit of both businesses, L3 Pizzeria is amenable to changing its name within 90 days and sharing the costs with Plaintiff.

### III.   LEGAL STANDARD

"Temporary restraining orders and preliminary injunctions serve similar functions and are subject to substantially the same legal standards." *Glaxosmithkline, LLC v. Brooks*, 2022 U.S. Dist. LEXIS 132470, at *1 (D. Md. July 25, 2022) (citing *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). A temporary restraining order or a preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)).

The grant of a TRO or a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The movant must establish all four elements in order to prevail. *See Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013). Plaintiff cannot do so here.

### IV.   ARGUMENT

**A. Plaintiff has not demonstrated that it is likely to succeed on the merits.**

To meet the first requirement for a preliminary injunction, the moving party must "clearly demonstrate" that they "will *likely succeed* on the merits," rather than present a mere "grave or serious question for litigation." *Real Truth about Obama v. Federal Election Com'n*, 575 F.3d

342, 346-47 (4th Cir., 2009) (emphasis in original). Plaintiff has failed to demonstrate that it will likely succeed on the merits of any of the causes of action addressed in their Motion for Temporary Restraining Order and Preliminary Injunction.

> **i. Plaintiff is not likely to succeed on the merits of its trademark infringement, vicarious trademark, and unfair competition claims against Mr. Maler and L3 Pizzeria**

To succeed on a trademark infringement claim, a plaintiff must prove: "(1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." *Rosetta Stone Ltd. v. Google, Inc.,* 676 F.3d 144, 152 (4th Cir. 2012). Vicarious trademark infringement requires a "finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Id.*, 676 F.3d at 165 (internal quotations omitted). "The test for a false designation of origin/unfair competition claim is essentially the same as the test for trademark infringement." *JFJ Toys, Inc. v. Sears Holdings Corp.,* 237 F. Supp. 3d 311, 327, 2017 WL 679219 (D. Md. 2017).

Mr. Maler and L3 Pizzeria deny that Plaintiff's mark is valid or protectable, as its dominant portion is a common first name used by businesses, including other restaurants, throughout Maryland and nearby states. They also deny that the trade name infringes Plaintiff's mark in any way. "The protection accorded trademarks is directly related to the mark's distinctiveness." *Id.*, 237 F. Supp. 3d at 328. Likelihood of confusion case law instructs courts to consider various factors, including, among others, the strength or distinctiveness of the plaintiff's mark. *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). Defendants' trade name is

5

readily distinguishable from "Matthew's Pizza." It contains the words "L3" and "Pizzeria" and omits the apostrophe in "Matthew's." It instead uses the common surname "Matthews." In fact, Defendants' trade name, "Matthews L3 Pizzeria," does not include any identical word used in "Matthew's Pizza."

"Similarity of the parties' marks focuses on the dominant portion of each to determine whether there exists a similarity in sight, sound, and meaning that would result in confusion." *JFJ Toys, Inc.* 237 F. Supp. 3d at 335 (internal quotations omitted). "Names—both surnames and first names—are regarded as descriptive terms and therefore one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning." *Perini Corp. v. Perini Const., Inc.,* 915 F.2d 121, 125, 1990 WL 135930 (4th Cir. 1990). "Secondary meaning exists if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise. In the case of a trade name, secondary meaning is [t]he power of a name ... to symbolize a particular business." *Id.* (internal quotations omitted). "Proof of secondary meaning entails vigorous evidentiary requirements." *Id.* (internal quotations omitted).

The "dominant portion" of Plaintiff's Mark is "Matthew's." The word "Matthew" is a very common first name. According to data published by the U.S. Social Security Administration, Matthew is the 13th most popular boy's name over the past 100 years, with approximately 1,632,726 boys named Matthew out of 179,421,535 male births. *See* Ex. 1.[3] The name has remained consistently popular in recent years, particularly in Maryland, where it ranked as the 17th most popular boy's name in 2020, 44th in 2021, 29th in 2022, 39th in 2023, and 30th in 2024. *See* Ex. 2. Similarly, the word "Matthews" is a very common surname. According to genetics and

---

[3] An Affidavit of Kayla Cotter, authenticating all the exhibits she culled from the internet, is attached as Ex. B.

health company 23andMe®, Matthews ranked as the 226th most frequent surname in the U.S. based on 2010 Decennial Census data. *See* Ex. 3. This is not an obscure or unusual name; it is among the most popular first and last names in the U.S., and especially common in Maryland.

Unsurprisingly, numerous other restaurants and businesses in Maryland and neighboring states incorporate the name "Matthew" or "Matthews" in their trade names. Two other restaurants in the surrounding area alone start with the name Matthew, *i.e.*, Matthew's 1600 in Catonsville and Matthew's Grill in Gaithersburg. *See* Ex. 4. In fact, a Google search for "Matthew's Restaurant Maryland" returns results for Matthew's 1600, Matthew's Pizza, and Matthew's Grill, with the first two results pertaining to Matthew's 1600. *See* Ex. 5. According to Maryland's Business Entity Search, over 400 businesses in Maryland have used the name "Matthew" in some capacity. *See* Ex. 6. Nearby states, such as New Jersey, likewise have multiple pizzerias and Italian restaurants with similar names, *i.e.*, Matthew's in Clifton, NJ, Matt's Pizza in Lindenwold, NJ, and Mathews Food and Drink in Jersey City, NJ. *See* Ex. 7. A Matthew's Tavern is located in Norwood, Pennsylvania. *See* Ex. 8. Plaintiff has not demonstrated that the name Matthew is distinctive or uniquely associated with its business.

Moreover, in its advertising, Plaintiff relies heavily on its reputation as "Baltimore's First Pizzeria," established in 1943. *See* Ex. 9. Plaintiff has never expanded or opened a second location in its more than eighty years of operation. A new pizzeria operating over twenty-five miles away in a different county does not, and cannot, detract from Plaintiff's reputation as the oldest pizzeria in Baltimore, even if it uses a similar, common personal name that is in no way inherently distinctive to Plaintiff's business. On October 13, 2025, L3 Pizzeria also issued a statement on its official Facebook page reiterating that it has no affiliation with Plaintiff. *See* Ex. 10. Neither

Mr. Maler nor L3 Pizzeria has ever represented in any way that they are affiliated with Plaintiff, other than to identify Mr. Maler as a former owner.

Despite Mr. Maler and L3 Pizzeria's dispute over whether Plaintiff holds a valid and protectable mark, they acknowledge that some customer confusion has occurred between Plaintiff and L3 Pizzeria. They wish to avoid such confusion, as L3 Pizzeria is a local, independent business located 25 miles away, and Mr. Maler intentionally separated from Plaintiff. While L3 Pizzeria is willing to change its name, it requires at least 90 days to do so to avoid significant business disruption, financial loss, and undue hardship for its employees. The name change is also expected to cost approximately $15,000, which L3 Pizzeria respectfully requests that Plaintiff split, in the interest of good faith. Because there is a grave and serious dispute that Plaintiff holds a valid mark, and because Defendants are willing to change the name of L3 Pizzeria within the next 90 days, the Motion should be denied.

**B. Plaintiff will not suffer irreparable harm in the absence of preliminary relief.**

To be entitled to a TRO, Plaintiffs must show they will suffer irreparable harm in the absence of preliminary relief. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). In addition, the irreparable harm must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). "If the plaintiff has made a strong showing that it will suffer irreparable harm if the injunction is denied, the court must balance the likelihood of that harm against the likelihood of harm that would be suffered by the defendant." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002).

On October 13, 2025, L3 Pizzeria issued a statement on its Facebook page clarifying that it is in no way affiliated with Plaintiff. *See* Ex. 10. Plaintiff has likewise acknowledged in a pinned

8

Google® comment that it is not affiliated with L3 Pizzeria. *See* <u>Ex. 11</u>.  Although Plaintiff asserts that L3 Pizzeria's product is of substantially inferior quality, L3 Pizzeria has a 4.0-star average on Google Reviews and 4.3 on Yelp, compared to Plaintiff's 4.6 on Google Reviews and 4.1 on Yelp, and cannot reasonably be said to be causing reputational harm to Plaintiff. *See* <u>Ex. 12</u>.  Eight of the eleven reviews cited in Paragraph 15 of Plaintiff's Complaint are five-star reviews. *See* Pl. Compl. ¶ 15.  Moreover, Plaintiff and L3 Pizzeria are approximately 26.7 miles away, a 40-minute drive from each other with limited traffic, and in different counties. *See* <u>Ex. 13</u>.  Even assuming minimal customer confusion, it is unlikely that Plaintiff is losing significant sales, and Plaintiff has not produced evidence of any lost revenue.  For the benefit of both businesses, L3 Pizzeria will agree in good faith to change its name within 90 days.  If injunctive relief were granted, L3 Pizzeria would be forced to immediately cease operations due to the extent of its marketing, rather than continue operating while updating its social media, advertising materials, signage, and other business identifiers.  As a result, L3 Pizzeria and its employees would suffer significant financial loss. Plaintiffs have failed to demonstrate that any alleged irreparable harm is actual or imminent within the next 90 days.  Based on the above, Plaintiff will not suffer irreparable harm in the absence of preliminary relief, or, at minimum, any alleged harm would not exceed the substantial harm that Defendants would incur.

    **C. The balance of equities does not favor preliminary relief and injunctive relief in this case is not in the public interest.**

As described *supra*, Mr. Maler and L3 Pizzeria have never held themselves out as being affiliated with Plaintiff.  In fact, L3 Pizzeria has issued an official statement on its Facebook business page, its primary online presence. *See* <u>Ex. 10</u>. Moreover, the two businesses are approximately 26.7 miles apart, a 40-minute drive in with limited traffic, and in different counties. *See* <u>Ex. 13</u>.  Plaintiff is unlikely to suffer significant sales loss due to any alleged similarity between

9

the two establishments and has also failed to demonstrate any negative reviews or lost sales attributable to L3 Pizzeria. For the benefit of both businesses, Defendants have agreed in good faith to change the business name within 90 days, despite serious questions regarding the validity and protectability of Plaintiff's alleged trademark, as the name "Matthew" or "Matthews" is a common first and last name. If injunctive relief were granted, L3 Pizzeria would incur substantial financial loss, as it would need to temporarily cease operations to update all its advertising, signage, social media, and other business identifiers. This hardship is undue, as Defendants are willing to change the name of L3 Pizzeria within 90 days, with the associated costs split between Defendants and Plaintiff. It would not serve the public interest to punish a local, independent business located 40 minutes away from Plaintiff, particularly when customer confusion is limited, any resulting harm is minimal, and the business is proactively taking steps to prevent future issues.

More to the point, given that Defendants are willing to change their name, the real issue before this Court is how long they should have to do so and who should bear the cost of that name change. Defendants are requesting 90 days to make that name change and half the costs of doing so. These allowances are more than reasonable, especially as to the amount of time this Court affords Defendants. Plaintiff will not be unduly injured during that 90-day period. Conversely, if Defendants are forced to immediately change their name, they will be forced to shut down for up to 90-days, which will call them tremendous financial hardship and will require them to layoff all their employees during that period. Further, Defendants have ever incentive to quickly change their name, so that they can start creating goodwill in it. Put bluntly, the balance of the equities overwhelmingly favors providing Defendants up to 90 days to effectuate their name change. It is also only fair and just for Plaintiff to pay half of those costs, which this Court can cap at $7,500 so that Plaintiff need not fear Defendants going over budget.

<u>In short</u>, this Court should deny Plaintiff's request for an immediate injunction and instead provide Defendants up to 90 days to their name with costs to be shared up to $7,500.

## V.     CONCLUSION

For the reasons stated herein, Defendants Matthews L3 Pizzeria, LLC and Christopher Maler request that this Court deny Plaintiff's Motions for TRO and Preliminary Injunction.

Respectfully submitted,

  /s/ Jan I. Berlage
Jan I. Berlage 23937
Gohn Hankey & Berlage LLP
201 N. Charles Street, Suite 2101
Baltimore, Maryland 21201
410-752-9300
410-752-2519 (fax)
jberlage@ghsllp.com

*Counsel for Matthews L3 Pizzeria
and Christopher Maler*

## **CERTIFICATE OF SERVICE**

I certify that on October 24, 2024, that a copy of the foregoing was electronically filed with the United States District Court for the District of Maryland using CM/ECF, with a Notice of said filing to:

>James B. Astrachan
>Kaitlin D. Corey
>Corey Tepe, LLC
>6325 Woodside Court, Suite 130
>Columbia, MD 21046
>jim@coreytepe.com
>kaitlin@coreytepe.com

                                            /s/ Jan I. Berlage
                                            Jan I. Berlage