## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| TOMATO PIE, INC. D/B/A MATTHEW'S PIZZA<br><br>      Plaintiff,<br><br>    v.<br><br>MATTHEWS L3 PIZZERIA, LLC, et al.<br><br>      Defendants. | <br><br><br><br><br><br>Civil Action No. 1:25-cv-03214-MJM |

### REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR ATTORNEY'S FEES AND COSTS

Plaintiff, Tomato Pie, Inc., doing business as Matthew's Pizza, by and through its undersigned counsel, hereby replies to Defendants' Memorandum in Opposition of Plaintiff's Motion for Preliminary Injunction.

## I.    INTRODUCTION

After disregarding three cease and desist letters and leaving Plaintiff with no other choice but to initiate litigation in federal court, Defendants *now* concede that there is actual confusion in the marketplace and that they are willing to change their name – but with the unreasonable and frankly astonishing request that Plaintiff pay half of Defendants' rebranding costs "in the interest of good faith." (ECF 24 p.8). Defendants have yet to act in good faith.

Plaintiff is the owner of the MATTHEWS PIZZA® trademark Registration No. 7613183 for "pizzerias; pizza parlors." Plaintiff's federal registration of the MATTHEW'S PIZZA® trademark is prima facie evidence that the mark is valid, that Plaintiff owns it, that Plaintiff has

acquired secondary meaning, that Plaintiff has exclusive nationwide rights to use the mark in commerce in connection with "pizzerias; pizza parlors", pursuant to 15 U.S.C. §§ 1057(b), (c) and 1115(a).

Defendants have willfully and deliberately infringed Plaintiff's mark to further their own interests and the interests of Matthew's L3 Pizzeria, LLC's owners. Defendants received, via Federal Express, Plaintiff's counsel's cease and desist letters in August of 2025 and ignored them. *See* **Exhibit A**.

On the entry table in Defendants' restaurant is an image of the outside of ***Plaintiff's building*** that Defendants' wrote "L3" in between the words "Matthews" and "Pizza" – in a blatant effort to tell consumers that they are the same as Plaintiff. *See* **Exhibit B** (Affidavit of Victoria Yassem).

 Defendants continue to deceive and confuse consumers into believing that Defendant, Matthews L3 Pizzeria, LLC is affiliated with Plaintiff, Tomato Pie, Inc. d/b/a Matthew's Pizza when it is not. Defendants' willful infringement of Plaintiff's mark gives rise to irreparable injury by causing Plaintiff to lose control of its reputation and goodwill, which cannot be remedied by monetary recovery. Defendants' infringing acts also harm the public by causing consumer confusion as to affiliation of Defendants' restaurant and by falsely implying that Defendants' restaurant is associated with or sponsored by Plaintiff's restaurant, thereby necessitating an injunction to protect and serve the public interest.

Plaintiff is, therefore, entitled to the preliminary injunction sought.

## II.    LEGAL STANDARD FOR PRELIMINARY INJUNCTIONS

A court may enter a preliminary injunction if the party seeking the injunction can make a clear showing that it is entitled to relief. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The four factors a court considers are:

> [T]he plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.
>
> *WV Ass'n of Club Owners and Fraternal Serv., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

A preliminary injunction is a remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). The Fourth Circuit has defined the status quo as "the last uncontested status between the parties which preceded the controversy." *Id.* at 320 (*quoting Aggarao v. MOL Ship Mgmt. Co*., 675 F.3d 355, 378 (4th Cir. 2012). A preliminary injunction can "act to restore, rather than merely preserve, the status quo, even when the nonmoving party has disturbed it." *Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017); *see also Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 378 (4th Cir. 2012) (The status quo to be preserved by a preliminary injunction, however, is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the "last uncontested status between the parties which preceded the controversy." (citations omitted)).

## III.    ARGUMENT

### A.    PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

The first *Winter* factor that the court considers in determining whether a party should be granted a preliminary injunction is whether a plaintiff is likely to succeed on the merits. To succeed on a trademark infringement action, the Plaintiff must establish (1) that it owns a valid mark; (2)

3

that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." *Rosetta Stone Ltd v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012). Defendants' Opposition only addresses the first and fourth factors. Defendants argue that Plaintiff does not own a valid mark and that the Defendants' use of the MATTHEWS L3 PIZZERIA mark is not likely to confuse consumers.

      **i.**     **Plaintiff's Registered Trademark MATTHEW'S PIZZA® is a Valid and Legally Protectable Mark Owned by Plaintiff.**

With regard to the first prong of whether Plaintiff is likely to succeed on the merits, Defendants argue in their Opposition that Plaintiff's federally registered trademark is not a valid and protectable mark.

Plaintiff's federal registration of the mark MATTHEW'S PIZZA® on the principal register of the United States Patent and Trademark Office serves as prima facie evidence of the validity of the MATTHEW'S PIZZA® mark, of Plaintiff's ownership of the mark, that the mark has acquired secondary meaning, and that Plaintiff maintains the exclusive right to use such mark in commerce in connection with the pizza services covered by the registration. *See* 15 U.S.C. §§ 1057(b) and 1115(a); *see also Potomac Conf. Corp. v. Takoma Acad. Alumni Ass'n*, No. DKC 13-1128, 2014 U.S. Dist. LEXIS 27123, at *19 (D. Md. Mar. 4, 2014). Defendants' write that "Plaintiff has not demonstrated that the name Matthew is distinctive or uniquely associated with its business" (ECF 24 p. 7). It is not Plaintiff's burden to do so—it is Defendants' burden.

Registration grants a presumption of ownership in the trademark and that the mark at a "minimum is descriptive *and* has obtained secondary meaning." *See Potomac Conf. Corp. v. Takoma Acad. Alumni Ass'n*, No. DKC 13-1128, 2014 U.S. Dist. LEXIS 27123, at *19 (D. Md.

Mar. 4, 2014) (citing *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001) (emphasis in original). The party challenging the trademark registrant's ownership "must overcome the presumption by a preponderance of the evidence." *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 400 n.15 (4th Cir. 2009) (citing *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775–76 (9th Cir. 1981)). Defendants "must offer significantly probative evidence to show that the mark is merely descriptive. Then—and only then—does the burden of proof shift back…." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006) (citing *Flextized, Inc. v. Nat'l Flextized Corp.*, 335 F.2d 774, 779–80 (2d Cir. 1964)). Defendants' "burden is not simply to show that the mark describes a feature of the trademark holder's product; rather, it must show that consumers regard the mark as merely descriptive of that product." *Id.* at 119.

"Simply *alleging* descriptiveness is insufficient to compel the holder of a registered mark to go forward with proof of secondary meaning; the putative infringer must *prove* descriptiveness by a preponderance of the evidence before the mix of issues changes and the burden of persuasion on the new issue (secondary meaning) reverts to the trademark holder." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006) (emphasis in original). "If the putative infringer does not cross that threshold, the presumption holds and distinctiveness is presumed." *Id.* "In that event, the trial court can proceed to consider the remaining elements of the infringement claim without first demanding that the trademark holder offer proof of secondary meaning." *Id.*

Here, Defendants put forth no evidence that consumers regard Plaintiff's mark as merely descriptive of its pizza restaurant—in fact, the evidence is quite the opposite: Consumers identify the MATTHEW'S mark to identify Plaintiff – not Defendants – which is why there is actual confusion in the marketplace, as admitted by Defendants.

Defendants argue that Plaintiff's registered trademark MATTHEW'S PIZZA® is not a valid or protectable mark because "its dominant portion is a common first name used by

businesses, including other restaurants, throughout Maryland and nearby states." (ECF 24 p. 5). Simply providing evidence of the popularity of a first name is insufficient to overcome the presumption that Plaintiff's mark is valid and protectable because it fails to show that consumers regard Plaintiff's mark as merely descriptive. Additionally, Defendants cannot argue with a straight face to this Court that Plaintiff has not acquired secondary meaning in its mark. Plaintiff owns and operates Baltimore's oldest pizzeria, which has been operating for eight decades and has gained national attention when it was featured on Barstool Sports' "One Bite Pizza Reviews" hosted by Dave Portney, garnering over 275,000 views since it was posted 9 months ago with over 1,000 comments. (ECF 2-1 p. 4).

Plaintiff's mark is clearly a valid and protectable mark.

**ii.    Defendants' Use of the Mark MATTHEWS L3 PIZZERIA is Likely to Cause Confusion (and Has Already Caused Significant Actual Confusion).**

With respect to the fourth element of whether Plaintiff is likely to succeed on the merits, Defendants assert that Plaintiff is not likely to succeed on the merits of its claims but only argue that the marks are not similar and that the businesses operate in different geographic territories. (ECF 24 p. 9).[1] For the purposes of Plaintiff's reply, Plaintiff's analysis is limited to responding to these two arguments.

1.    *Plaintiff and Defendants' Marks are Nearly Identical.*

In their Opposition, Defendants concede that the dominant portion of Plaintiff's Mark is "MATTHEW'S". (ECF 24 p. 6). Nonetheless, Defendants advance the untenable argument that their mark, "MATTHEWS L3 PIZZERIA," is "readily distinguishable" from "MATTHEW'S PIZZA" and thus contesting the similarity of the marks based solely on minor variations: the

---

[1] Plaintiff outlined in its Motion for Preliminary Injunction why each of the nine likelihood of confusion factors under *George & Co. LLC v. Imagination Entm't Ltd.* weigh in favor of Plaintiff and thus Defendants' use of the mark MATTHEWS L3 PIZZERIA is likely to cause confusion. 575 F.3d 383, 393 (4th Cir. 2009). (ECF 2-1).

omission of an apostrophe (MATTHEW'S vs. MATTHEWS), the use of "PIZZERIA" instead of "PIZZA," and Defendants' addition of the term "L3."[2] (ECF 24. p. 5–6).

It is undisputed that MATTHEWS is the dominant part of both parties' marks. *World Gym Licensing, Ltd. v. Fitness World, Inc.*, 47 F. Supp. 2d 614, 622 (D. Md. 1999) (in "evaluating the similarity of two trademarks greater weight [should be] given to the dominant or salient portions of the mark"). Defendants' use of an additional term, "L3" following the dominant portion of the mark is not sufficient to distinguish Defendants' mark from Plaintiff's registered mark. *See Halal Shack, Inc. v. Legends Halal Shack, LLC*, No.: 1:19-cv-03126-SAG, 2020 U.S. Dist. LEXIS 19025 (D. Md. Feb. 5, 2020) (the Court found that Defendant incorporated the majority of THE HALAL SHACK's mark into its own mark, LEGENDS HALAL SHACK, and "the near-total incorporation illustrates the similarity of the two marks"); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922 (4th Cir. 1995) (the phrase "Lone Star" is the dominant mark in the names "Lone Star Grill" and in the alleged infringer's name "Lone Star Café" where both entities were involved in restaurant service); *see also Philip Morris, Inc. v. Imperial Tobacco Co. (of Great Britain and Ireland), Ltd.*, 251 F. Supp. 362, 379–80 (E.D. Va. 1965) (the word "PLAYER'S" was the "distinguishing, dominant, and salient feature" of the trademark although "PLAYER'S Navy Cut" was the complete registered mark; defendant had no right to use the dominant feature "PLAYER'S" either alone or in combination with the other words).

In *Halal Shack, Inc.,* this court found that the two marks' "near-total incorporation" illustrated the similarity of the two marks, and the close proximity of the two restaurants being within a ten-mile radius made them direct competitors, "exacerbat[ing] the likelihood that consumers will confuse the two, and could suggest a possible intent on Defendant's part to benefit

---

[2] Some consumers believe "L3" means Location 3 of Plaintiff as shown in the anecdotal evidence attached hereto as Exhibit C.

from confusion with a pre-existing establishment." No.: 1:19-cv-03126-SAG, 2020 U.S. Dist. LEXIS 19025, at *9 (D. Md. Feb. 5, 2020).

        2.    *The Parties Serve Customers in the Same Geographic Territory.*

        a.    *Plaintiff's Registration Creates a Presumption That it Has Nationwide Priority to Use the Mark.*

Plaintiff's mark is a registered mark. Therefore, there is a presumption that it is entitled to use the mark throughout the nation, and Defendant has not rebutted that presumption. Registration of a mark "creates a presumption that the registrant is entitled to use the mark throughout the nation." 15 U.S.C. § 1057(c); *Emergency One, Inc. v. Am. Eagle Fire Apparatus Co., Inc.*, 332 F.3d 264, 268–69 (4th Cir. 2003). To find a likelihood of confusion, it is not necessary for the infringer to be located in the same geographic market as the mark's owner. *Westmont Living, Inc. v. Ret. Unlimited, Inc.*, 132 F.4th 288, 296 (4th Cir. 2025) ("…it is almost universally established that it is *not* necessary for the infringer to be located in the same geographic market as the mark's owner or indeed even to be in competition with the mark's owner.")

"Just as it is not necessary for trademark infringement or unfair competition that the services of the parties be in actual competition, so also is it not necessary that the goods or services of the parties be in direct competition *in the same geographical market. Mere geographical distance is not controlling* where the reputation of the senior user's mark has been carried into a trade area prior to the junior user's adoption and use. Modern advertising media lend credence to applying the truism, 'It's a small world.'" *Id. quoting* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 26:18, at 26-28 (4th ed. 2012) (emphasis added).

The facts in this case are similar to those in *Westmont Living*, wherein the Court held that "confusion is more likely when the plaintiff and the defendant compete with the identical service and the identical name, as the parties do here. In those circumstances, it may be most difficult for

a casual consumer to distinguish the two companies when engaging in online research for retirement living, and the physical distance of the parties' facilities does not eliminate that risk." *Id.* at 299. In vacating the district court's reliance on only the geographical distance between the facilities of the two parties in determining a likelihood of confusion, the Fourth Circuit court found that approach "was simply too narrow" and "[w]ere that approach appropriate, a developer could build a 'Disney World' in Wheaton, Illinois, without infringing the marks of the real 'Disney World' in Orlando, Florida. Such surely cannot be the case." *Id.*

          b.      *Plaintiff's Advertising Does Not Geographically Limit Itself to Serving Only the Baltimore Market.*

Defendants assert that Plaintiff "relies heavily on its reputation as Baltimore's First Pizzeria established in 1943" and that "a new pizzeria operating over twenty-five miles away in a different county does not, and cannot, detract from Plaintiff's reputation as the oldest pizzeria in Baltimore, even if it uses a similar, common personal name that is in no way inherently distinctive to Plaintiffs' business." (ECF 24 p. 7). While Defendants are focused on Plaintiff's advertising, they fail to address their own advertising. Defendants' own website states that its restaurant is "The true taste of Baltimore," and Defendants' own menu states "The true taste of Baltimore. We are honored to share a tradition that has been loved by generations…":





Moreover, Defendants' own business logo states "For the best pizza in Baltimore come to Forest Hill":



Defendants cannot argue that Forest Hill and Baltimore are two geographically different marketplaces without overlapping customers when Defendants themselves advertise as serving the Baltimore community. Plaintiff, operating for over eighty years, has customers from all over the state of Maryland and outside of the state of Maryland. Plaintiff's restaurant is extremely well

known in Maryland – and outside of Maryland – as evidenced by the abundance of actual confusion cited in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (and attached to this Reply).  Here, as in *Westmont Living*, both parties offer identical services under nearly identical names, and the Plaintiff's longstanding reputation as "Baltimore's First Pizzeria", its eight decades of operation (serving consumers in Maryland and beyond), and the third party national publicity Plaintiff has received (which has driven traffic from all over Maryland and outside of Maryland), are reasons why there was an immediate abundance of actual confusion in the marketplace when the Defendants' opened their restaurant in August.

*c. Disclaimers Are Ineffective Because They Do Not Dispel Confusion.*

 Additionally, the fact that after receiving notice of Plaintiff's lawsuit, on October 13, 2025, Defendants' made a single statement on its Facebook page (which has since been buried with more Facebook posts still referring to themselves as MATTHEWS) that is it not affiliated with Plaintiff does not alleviate the likelihood that consumers will believe that Defendants' restaurant is owned by Plaintiff's restaurant or is affiliated or sponsored by Plaintiff's restaurant. See *Caterpillar Inc. v. Telescan Techs., LLC*, No. 00-1111, 2002 U.S. Dist. LEXIS 3477, at *10 (C.D. Ill. 2002) ("The fact that TeleScan has placed disclaimers on the web sites does not alleviate the likelihood that consumers will believe that the web sites are associated with Caterpillar. First, disclaimers normally are ineffective. Second, even if the disclaimers are effective, they will not cure the problem of initial interest confusion…"); *see also Paccar v. TeleScan*, 115 F. Supp. 2d 772, 778 (E.D. Mich. 2000) ("A disclaimer that purports to disavow association with the trademark owner after the consumer has reached the site comes too late; the customer has already been misdirected.").

**B. IRREPARABLE HARM IS PRESUMED WHERE A TRADEMARK PLAINTIFF ESTABLISHES LIKELIHOOD OF SUCCESS OF THE MERITS**

11

Defendants incorrectly assert that Plaintiff must show that it will suffer irreparable harm in the absence of preliminary relief. (ECF 24 p. 8).

Courts in the Fourth Circuit have found that irreparable harm is presumed in trademark infringement cases once the plaintiff demonstrates a likelihood of confusion, given the inherent injury to the reputation and goodwill of the trademark owner. *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002); *see also Fairbanks Capital Corp. v. Kennedy*, 303 F. Supp. 2d 583, 590 (D. Md. 2003) ("The irreparable harm to a plaintiff trademark owner arising from the conduct of an infringer is enormous, immediate, and presumed in law."); *Seasons Pizza Franchisor, Inc. v. 4 Seasons Pizza & Subs, Inc.*, No. WDQ-15-739, 2015 U.S. Dist. LEXIS 128931 (D. Md. Sept. 24, 2015); *NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484 F. Supp. 2d 392, 401 (D. Md. 2007). Judge Blake held, "Generally, a finding of irreparable harm is automatic in a trademark infringement case where the trademark holder has demonstrated unlawful use and the likelihood of consumer confusion." *Prosperity Systems, Inc. v. Ali*, No. CCB-10-2024, 2010 U.S. Dist. LEXIS 132414, at *13 (D. Md. Dec. 15, 2010), citing *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 42-43 (2d Cir. 1986); *see also Merry Maids Ltd. P'ship v. Kamara*, 33 F. Supp. 2d 443, 445 (D. Md. 1998). As Plaintiff will likely prevail on the merits, irreparable harm is presumed, and a preliminary injunction is a proper remedy.

### C. THE BALANCE OF EQUITIES TIPS IN FAVOR OF GRANTING PLAINTIFF PRELIMINARY INJUNCTIVE RELIEF AND SUCH RELIEF IS IN THE PUBLIC INTEREST.

Plaintiff, a pizza restaurant, has incurred legal expenses seeking to enforce its registered trademark and to compel Defendants to cease infringement of its mark. Plaintiff made multiple good-faith efforts to resolve this matter without burdening the Court's resources, but Defendants ignored Plaintiff's cease and desist letters and hoped Plaintiff would not file suit. Having caused

this litigation through their own actions and inactions, Defendants now seek to shift their costs to Plaintiff requesting that Plaintiff pay half of Defendants' costs to change its name. Defendants' request that Plaintiff subsidize the cost of their name change is unfounded and contrary to principles of equity. Having willfully ignored Plaintiff's repeated efforts to resolve this matter without court intervention, Defendants should bear full responsibility for the consequences of their infringement.

Trademark law is intended "to protect purchasers from being misled as to the identity of the enterprise from which goods and services are obtained." *Iceny USA, LLC v. M & M's, LLC*, 421 F. Supp. 3d 204, 223 (D. Md. 2019) (citing *AMP Inc. v. Foy*, 540 F.2d 1181, 1185 (4th Cir. 1976)). Defendants wrote that confusion is "minimal," but the consuming public says otherwise as attached on **Exhibit C** (Screenshots of Comments Since Plaintiff filed its Complaint).

There is ample evidence of consumer confusion. Unless and until Defendants change the name of their pizza restaurant, consumers will continue to be deceived. Additionally, in addition to Toast, the payroll provider that was confused as stated in Plaintiff's initial filings, Maryland State Department of Assessments and Taxation seems to also be confused. It sent Defendant's mail to Plaintiff's address. *See* **Exhibit D**.

In weighing the equities, any harm Defendants claim from needing to change their name is entirely self-inflicted. Their losses, if any, arise solely from their infringement of Plaintiff's mark. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.12 (5th Cir. 1991). Likewise, courts have held that hardships resulting from infringing activities carry little weight. *See Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473,

486 (E.D. Tex. 2020) ("Defendants' alleged hardship merits little consideration because it results directly from Defendants' decision to build their business around confusingly similar marks and to continue their efforts to do so after they received Fletcher's cease-and-desist letter."). Moreover, and as is the case here, "[a]ny acts after receiving a cease-and-desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts." *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 203 (5th Cir. 1998).

In *Stanley G. Alexander, Inc. v. Alexander's Movers LLC*, No. SAG-19-2573, 2020 U.S. Dist. LEXIS 114040, at *10–11 (D. Md. June 29, 2020), the court granted a preliminary injunction where monetary damages could not remedy ongoing infringement. Specifically, the court held that due "to Defendant's lack of response to Plaintiff's cease-and-desist letters…there is an ongoing threat of continued infringement." *Id.* Additionally, the court found that the balance of hardships weighs in Plaintiff's favor because "Defendant is operating its business in direct violation of the Lanham Act" and the injunction will serve the public interest because "there is greater public benefit in securing the integrity of a Plaintiffs' mark than in allowing a Defendant to continue to use the mark in violation of the Plaintiffs' rights." *Id.* at *11.

Defendants' claim that they never held themselves out as affiliated with Plaintiff (ECF 24, p. 9) is patently false. Defendants deliberately adopted Plaintiff's mark for the identical type of business, which inherently misrepresents affiliation. Further, as shown in **Exhibit B**, Defendants modified a photograph of Plaintiff's building by inserting "L3" between "Matthews" and "Pizza," intentionally misleading consumers into believing they are connected to Plaintiff.

As in *Stanley G. Alexander, Inc.*, the equities favor Plaintiff, and the public interest supports enjoining Defendants' ongoing infringement of Plaintiff's mark.

## IV.    CONCLUSION

Plaintiff is the exclusive owner of the MATTHEW'S PIZZA® mark for "pizzerias; pizza parlors." Defendants have no trademark rights in the MATTHEW'S PIZZA® mark, nor any right to use such mark. Defendants' unauthorized use of the MATTHEW'S PIZZA® mark constitutes willful and deliberate infringement, which acts have and continue to deceive and confuse the public and consumers into believing that Defendants are affiliated with or sponsored by Plaintiff. Plaintiff's strong showing of a likelihood of consumer confusion gives rise to a presumption of irreparable injury, and a preliminary injunction is in the public interest as it will safeguard the public from further deception and confusion. Accordingly, Plaintiff's Motion for Preliminary Injunction should be granted.

October 30, 2025                                  Respectfully submitted,


                                                  */s/ Kaitlin D. Corey*_____
                                                  James B. Astrachan (Fed. Bar No. 03566)
                                                  Kaitlin D. Corey (Fed. Bar No. 19907)
                                                  Corey Tepe, LLC
                                                  6325 Woodside Court, Suite 130
                                                  Columbia, MD 21046
                                                  Telephone: (443) 452-5280
                                                  Facsimile: (443) 452-5262
                                                  jim@coreytepe.com
                                                  kaitlin@coreytepe.com
                                                  ***Attorneys for Plaintiff, Tomato Pie, Inc. d/b/a Matthew's Pizza***